Richard A. Russo, Esquire
Attorney I.D. No. 32311
Andrew D. Bigda, Esquire
Attorney I.D. No. 74675
ROSENN, JENKINS & GREENWALD, LLP
15 South Franklin Street
Wilkes-Barre, PA    18711
(570)  826-5650

Attorneys for Plaintiffs,
Helen and Anthony Grosek, Jr.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN GROSEK and ANTHONY GROSEK, JR., Her Husband, | : | |
| | : | |
| Plaintiffs | : | |
| | : | JURY TRIAL DEMANDED |
| VS. | : | |
| | : | |
| PANTHER II TRANSPORTATION, INC., | : | JUDGE MUNLEY |
| PANTHER EXPEDITED SERVICES, | : | |
| INC., and ANTHONY L. SANDERS, | : | NO   3:07-CV-1592 |
| a/k/a TONY L. SANDERS, | : | |
| | : | |
| Defendants | : | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING PUNITIVE DAMAGE DISCOVERY

Plaintiffs, Helen Grosek and Anthony Grosek, Jr., Her Husband, hereby file

this Brief in opposition to the Defendants' Motion for Protective Order regarding

Plaintiffs' Punitive Damage Request for Production of Documents.

591814.1

## I.    PROCEDURAL AND FACTUAL HISTORY

Plaintiffs filed their Complaint on August 29, 2007, as a result of the serious bodily injuries suffered by Helen Grosek on May 14, 2007. The automobile she was driving was broadsided by a tractor trailer.  Defendant, SANDERS, was operating the tractor trailer as an owner/operator for the PANTHER Defendants. SANDERS was cited and found guilty of running a red light.

On April 15, 2008, after conducting discovery, Plaintiffs filed a Motion for Leave to Amend their Complaint so as to assert a claim for punitive damages against the Defendants. This Motion was opposed.  At the time of the Motion, pursuant to this Court's Scheduling Order, discovery was to be completed by July 1, 2008, and Plaintiffs' expert reports were likewise due by July 1, 2008.

On June 4, 2008, given the approaching date for completion of discovery and production of Plaintiffs' expert reports, counsel for Plaintiffs contacted counsel for Defendants to suggest an approach to allow for the completion of the pretrial discovery and production of expert reports in a manner that would not delay this case.   Plaintiffs' counsel proposed to serve punitive damage discovery notwithstanding that the court had not yet ruled on the Motion for Leave to Amend. This would permit the parties to complete discovery within the discovery deadline and Plaintiffs could produce their expert reports, including a punitive damages economic report, in a timely fashion.  Plaintiffs agreed to confidentiality

2

591814.1

if it was an issue with Defendants.   Defense counsel rejected this approach. Consequently, the Court was notified and it promptly held a conference call with counsel on June 4, 2008. The specific purpose of the call was to address Plaintiffs' counsel's request that Plaintiffs be permitted to serve punitive damage discovery, even though the Court had not yet ruled on the Motion for Leave to Amend the Complaint. This would have allowed financial discovery to be obtained before the expiration of the discovery deadline so that expert reports could be timely produced.

During the conference call, Defendants' counsel opposed the punitive discovery because the Court had not yet ruled on whether the Complaint could be amended to include punitive damages. After full argument, the Court advised the parties that the Motion for Leave to Amend the Complaint was granted. Moreover, the Court extended the discovery deadline and the date for production of all expert reports for forty five (45) days. Defense counsel did not request that Plaintiffs' punitive damage discovery be deferred until after a summary judgment motion that might be filed, nor was there ever a request (then or now) that discovery be bifurcated so as to separate punitive damages discovery from all other discovery.

Counsel for Plaintiffs was directed to prepare an Order consistent with the Court's rulings, to submit it to defense counsel for her review, and, thereafter, to submit it to the Court. The proposed Order was prepared by Plaintiffs' counsel and

3

591814.1

submitted to defense counsel on June 5, 2008. (Attached hereto as Exhibit "A" are the e-mail and proposed Order.)

On June 6, 2008, before the aforementioned Order could be submitted to the Court, the Court memorialized its June 4, 2008 ruling on the Motion to Amend and issued a written Order granting the Motion for Leave to File the Amended Complaint. Plaintiffs' counsel then revised the proposed Order to omit the portion addressing the Motion to Amend and re-submitted it to defense counsel. (Attached hereto as Exhibit "B" are the e-mail and revised proposed order.)

Inasmuch as defense counsel neither objected to the revised Order nor suggested any changes, the proposed Order was submitted to the Court and executed by the Court that same day. In this second June 6, 2008 Order, the Court set a deadline for completion of all discovery and production of all expert reports. Significantly, the Court did not create any bifurcated schedule, nor had any party requested one.

4

II.   DISCUSSION AND LAW

A.   Issue:

WHETHER DEFENDANTS FAILED TO CARRY THEIR
BURDEN TO ESTABLISH "GOOD CAUSE" TO WARRANT
A PROTECTIVE ORDER?

Suggested Answer: Yes

Federal Rule of Civil Procedure 26(c) provides that a person from whom

discovery is sought may move the court, for good cause shown, to issue an Order

protecting the person or party from "annoyance, embarrassment, oppression, or

undue burden or expense." Fed. R.Civ.P. 26(c). However, such Orders are not to

be issued as a matter of course. Instead:

> "A party seeking a protective order over discovery materials
> must demonstrate that "good cause" exists for the protection of
> that material."

Glenmede Trust Co. v. Thompson, 56 F. 3d 476, 483 (3d Cir. 1995). See also

Pansy v. Borough of Stroudsburg, 23 F. 3d 772, 786 (3d Cir. 1994) ("In the context

of discovery, it is well-established that a party wishing to obtain an order of

protection over discovery material must demonstrate that 'good cause' exists for

the order of protection.")

The Glenmede Court added that:

> "'Good cause' is established when it is specifically
> demonstrated that disclosure will cause a clearly defined and
> serious injury. [Citation omitted] Broad allegations of harm,

5

591814.1

unsubstantiated by specific examples, however, will not suffice." [citation omitted].

Supra, citing, Pansy v. Borough of Stroudsburg, 23 F. 3d. 772, (3d Cir. 1994), (emphasis added).

Some of the factors that the court looks to in evaluating whether good cause exists are whether disclosure will violate any privacy issues; whether the information is being sought for a legitimate purpose or for an improper purpose; whether disclosure of the information will cause a party embarrassment; whether confidentiality is being sought over information important to public health or safety; whether the sharing of information among litigants will promote fairness and efficiency; whether a party benefiting from the order of confidentiality is a public entity or official; and whether the case involves issues important to the public. Glenmede, supra; Pansy, supra. The Court of Appeals for the Third Circuit further recognizes that the district court is best suited to determine what factors are relevant to a dispute, and indicates that the analysis should reflect a balancing of private versus public interests. Glenmede, supra, Pansy, supra.

Here, Defendants have made no showing of good cause for the issuance of a protective order. There is no demonstration of any "clearly defined and serious injury" that will be caused by disclosure. Defendants' Motion and Brief are devoid of specific examples, or even a coherent theory, of how harm might befall them by

6

591814.1

production of the financial information, especially because Plaintiffs are willing to agree to confidentiality regarding the requested information. As noted above, Plaintiffs have offered on multiple occasions to agree to keep the requested information confidential, except for use in the instant action, but Defendants still oppose any such discovery. Defendants present nothing more than broad allegations of harm, unsubstantiated by specific examples, that our Court of Appeals has determined is insufficient.

"[T]he burden of justifying the confidentiality of each and every document subject to be covered by a protective order remains on the party seeking the order." Pansy, supra. Not surprisingly, PANTHER is unable to demonstrate how discovery requests served upon it for financial information of Fenway Partners or PANTHER's parent companies causes harm to PANTHER. Indeed, PANTHER'S peculiar request for a protective order for information regarding Fenway Partners or its parent companies tips its hand as to why this information is critical in evaluating PANTHER's net worth. In trying to roadblock this non-party information, PANTHER demonstrates the kind of relationship that may provide the basis to pierce its corporate veil. Equally significant, PANTHER has not alleged that its own financial information is strictly confidential, not can it do so, because even a cursory internet search discloses PANTHER filings with governmental agencies that disclose some of its financial information.

7

Accordingly, because Defendants have failed to make a showing of good cause for the requested protective order, their Motion for a Protective Order should be denied.

B.   Issue:

<u>WHETHER DEFERRING PUNITIVE DAMAGE DISCOVERY UNTIL AFTER A MOTION FOR SUMMARY JUDGMENT WILL BE GREATLY PREJUDICIAL TO PLAINTIFFS?</u>

Suggested Answer: Yes

Defendants' general challenge to Plaintiffs conducting any punitive damage discovery whatsoever is conceived in error and built upon a factual misconception that the August 15, 2008 discovery deadline merely relates to liability and compensatory damages discovery. Defendants' Motion for Protective Order presumptuously presupposes that a Motion for Summary Judgment would be filed after the completion of discovery, and only after a favorable ruling on the Motion for Summary Judgment could Plaintiffs serve discovery regarding financial/net worth information. Defendants contend that a subsequent Scheduling Order would be issued regarding a new discovery period for punitive damages discovery, followed by an additional time period within which Plaintiffs (and presumably Defendants) would have to produce any punitive damage expert reports. The pre-trial conference, case management plan, and the discovery orders and conferences never evidenced such plan.

591814.1

Defendants never requested and the Court never ordered that discovery be bifurcated. Moreover, Defendants did not object to the Court's most recent discovery order and should not be allowed to thwart it.

The position taken by Defendants wastes the parties' resources and the court's time. While Defendants may have resources to waste, their position poses a risk of incurable prejudice to Plaintiffs. As Defendants are aware, the Groseks are 82 years old and the punishment Mrs. Grosek has endured, and continues to endure, is life threatening. She has already undergone nine (9) surgeries and is expected to undergo an additional surgery in the near future. (Attached as Exhibit "C" is a medical report from Dr. Jonathan Hosey, one of her treating neurologists.)

A longer delay only increases the risk that Mrs. Grosek may die before having her day in court. Whether this is the Defendants' design or simply a by-product of their approach, Plaintiffs will be harmed by more delay. This prejudice to Plaintiffs, standing alone, is a good and sufficient reason to deny the protective order.

This Court's approach accounts for this reality. The parties have been held to strict, but reasonable, deadlines. From the outset, the parties have been directed to contact the Court with discovery disputes rather than delay the case by time-consuming discovery motions, and the Court has availed itself on short notice to resolve disputes in moving this case forward. In short, this Court's approach has

591814.1

adhered to the fundamental principle of Fed. R.Civ. P. 1 that the rules of procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of any action and proceeding." (emphasis supplied).

In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process. <u>Pansy</u>, <u>supra</u>. Applying this balance, it is clear that Defendants' protective order should be denied and their contention that punitive damage discovery should be deferred until after a ruling on a Motion for Summary Judgment should be rejected.

591814.1

C.    Issue

WHETHER PLAINTIFFS' PUNITIVE DAMAGE REQUEST
FOR PRODUCTION OF DOCUMENTS IS REASONABLY
CALCULATED TO LEAD TO THE DISCOVERY OF
ADMISSIBLE EVIDENCE?

Suggested Answer: Yes

Defendants object to Plaintiffs' request for financial information for the years 2003 – 2008 because they claim the time period is "over-broad." This time period encompasses the year of the crash (2007), the year after the crash (2008, in which year the case may be tried), and four (4) years prior to the crash. The reason for the 6 year request is plain. In order to properly assess Defendants' net worth, information such as sales tends, gross profits, operating expenses and dividends must be viewed over time and within the context in which those trends occur. This is especially so where a corporate restructuring may have taken place; or where an economic downturn due to the national or international economy may have impacted a company's finances for a limited time period, or where acquisitions have been made. Any of these could distort a net worth analysis if a financial snapshot is taken with information only from a specific year.

Plaintiffs' financial expert, whose identity has not yet been disclosed in discovery, has advised that the information for this time period would be helpful in his analysis of Defendants' net worth and why a 1 year snap shot (2007), as

591814.1

proposed by Defendants, is insufficient.   If the Court would like to conduct an <u>in-camera</u> conference with Plaintiffs' financial expert, the expert can advise the Court precisely why he requests this information to conduct his analysis.  Once again, as with all financial discovery, Plaintiffs will agree to confidentiality so there is no harm to Defendants in producing this information.

Similarly, Defendants take issue with producing all of the documents they filed with the U.S. Securities and Exchange Commission.  Inasmuch as Defendants are not publicly traded companies, one would expect that there are not a significant number of documents that they have filed.   These documents may contain information such as financial projections so they are certainly relevant.  Moreover, these documents are not confidential because they are public documents.  Contrary to Defendants' contentions, Plaintiffs' requests are reasonable given the magnitude and nature of Defendants' business, and they are relevant for discovery purposes inasmuch as they may lead to the discovery of admissible evidence.  Defendants' broad allegations of harm, unsubstantiated by specific examples, fail to constitute the "good cause" requirement of Fed. R. Civ. P. 26(c).

Balancing the need for this information, the great harm that can befall Plaintiffs from delay in this case, and Plaintiffs' clear willingness to agree to confidentiality against Defendants' broad, unsubstantiated allegation of harm, the Motion for Protective Order should be denied.   In so doing, this Court will be

591814.1

adhering to the guiding principles of Fed. R. Civ. P. 1 - securing the just, speedy and inexpensive determination of this action.

ROSENN, JENKINS & GREENWALD, LLP

BY:   /S/ RICHARD A. RUSSO
            RICHARD A. RUSSO, ESQUIRE
            Attorney I.D. No.   32311
            ANDREW D. BIGDA, ESQUIRE
            Attorney I.D. No.   74675
            15 South Franklin Street
            Wilkes-Barre, PA     18711
            (570)   826-5650
            Attorneys for Plaintiffs

591814.1

**Exhibit A**

## Richard A. Russo

| | |
|---|---|
| **From:** | Richard A. Russo |
| **Sent:** | Thursday, June 05, 2008 2:18 PM |
| **To:** | 'Valerie Kellner' |
| **Cc:** | Andrew D. Bigda |
| **Subject:** | Grosek v. Panther |

**Attachments:** Richard A Russo, Esquire.vcf; Order.DOC

Dear Valerie:

Pursuant to Judge Munley's directive yesterday afternoon, enclosed is the proposed Order regarding the rulings that the Court made. I hope to send this proposed Order to the Court tomorrow morning. If you have any questions or concerns, please let me know as soon as possible. Thank you.

Rick Russo

Richard A. Russo, Esquire
Attorney I.D. No. 32311
Andrew D. Bigda, Esquire
Attorney I.D. No. 74675
ROSENN, JENKINS & GREENWALD, L.L.P.
15 South Franklin Street
Wilkes-Barre, PA 18711
(570) 826-5650

Attorneys for Plaintiffs,
Helen and Anthony Grosek, Jr.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN GROSEK and ANTHONY GROSEK, JR., Her Husband, | | |
| Plaintiffs | | JURY TRIAL DEMANDED |
| vs. | | |
| PANTHER II TRANSPORTATION, INC., PANTHER EXPEDITED SERVICES, INC., and ANTHONY L. SANDERS a/k/a TONY L. SANDERS, | | CIVIL ACTION NO. 3:07-CV-1592 |
| Defendants | | |

### ORDER

AND NOW, this 4th day of June, 2008, it is hereby ORDERED that the

Plaintiffs' Motion for Leave to Amend Complaint is GRANTED.  Pursuant to

Middle District Local Rule 15.1(a), the clerk shall forthwith file the Amended

Complaint.

589017.1

It is further ORDERED that:

1.    The date for completion of discovery is extended until August 15, 2008;

2.    The date for the filing of dispositive motions is extended until September 3, 2008;

3.    The date for production of Plaintiffs' expert reports is extended until August 15, 2008; and

4.    The date for production of Defendants' expert reports is extended until September 15, 2008.

_____

J.

589017.1

**Exhibit B**

## Richard A. Russo

| | |
|---|---|
| **From:** | Richard A. Russo |
| **Sent:** | Friday, June 06, 2008 3:58 PM |
| **To:** | 'Valerie Kellner' |
| **Cc:** | Andrew D. Bigda |
| **Subject:** | Grosek v. Panther |

**Attachments:** Richard A Russo, Esquire.vcf; Revised Order.pdf

Dear Valerie,

Since the Court issued its own Order regarding the Amended Complaint, attached is a revised order that merely addresses the new deadlines.  Unless I hear from you to the contrary, I will file this Monday morning.

Rick

Dear Valerie:

Pursuant to Judge Munley's directive yesterday afternoon, enclosed is the proposed Order regarding the rulings that the Court made. I hope to send this proposed Order to the Court tomorrow morning. If you have any questions or concerns, please let me know as soon as possible. Thank you.

Rick Russo

Richard A. Russo, Esquire
Attorney I.D. No. 32311
Andrew D. Bigda, Esquire
Attorney I.D. No. 74675
ROSENN, JENKINS & GREENWALD, L.L.P.
15 South Franklin Street
Wilkes-Barre, PA 18711
(570) 826-5650

Attorneys for Plaintiffs,
Helen and Anthony Grosek, Jr.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN GROSEK and ANTHONY GROSEK, JR., Her Husband,<br><br>Plaintiffs<br><br>vs.<br><br>PANTHER II TRANSPORTATION, INC., PANTHER EXPEDITED SERVICES, INC., and ANTHONY L. SANDERS a/k/a TONY L. SANDERS,<br><br>Defendants | JURY TRIAL DEMANDED<br><br>CIVIL ACTION NO. 3:07-CV-1592 |

## ORDER

AND NOW, this 6th day of June, 2008, it is ORDERED that:

1.     The date for completion of discovery is extended until August 15, 2008;

589017.1

2.    The date for the filing of dispositive motions is extended until September 3, 2008;

3.    The date for production of Plaintiffs' expert reports is extended until August 15, 2008; and

4.    The date for production of Defendants' expert reports is extended until September 15, 2008.

_____
                                                    J.

589017.1

**Exhibit C**

**Neuroscience Service Line**
MC 14-05
100 North Academy Avenue
Danville, PA 17822
570 214 9410 Tel
570 214 6715 Fax

**Jonathan P. Hosey, M.D.**
Director, Dept. of Neurology
Medical Director
Neuroscience Service Line
jhosey@geisinger.edu

**Geisinger®**
**Health System**

Heal. Teach. Discover. Serve.

February 25, 2008

Attorney Richard Russo
Rosenn, Jenkins, Greewald
15 S. Franklin Street
Wilkes Barre, PA  18711

RE:  Helen C. Grosek

To Whom It May Concern:

Mrs. Helen C Grosek is an 81-year-old woman who
was involved in a motor vehicle accident on May
14, 2007, in which she was the restrained driver
of her motor vehicle when a truck collided with
her car.  She was stabilized on the scene and
transferred to the trauma center at Community
Medical Center in Scranton, PA.  Secondary to her
injury complex, she was then transferred to
Geisinger Medical Center, Danville, PA.  She was
seen in the emergency department as a trauma
alert.

Her initial injury complex consisted of:
1. A large acute subdural hemorrhage overlying the
left cerebral hemisphere with mass effect and
minimal shift of the midline from left to right,
minimal subarachnoid hemorrhage layering in the
intrapeduncular fossa and left sylvian fissure,
acute subdural hemorrhage layering along the falx
cerebri, mass effect of the left cerebral
hemisphere with mild effacement of the cortical
sulci and minimal effacement of the left lateral
ventricle, secondary to cerebral contusion/trauma.
2. Diffuse axonal injury and cerebral contusion of
the brain.
3. Acute fracture/dislocation of the C2 vertebral
body with full shaft width displacement of the
major fracture parts C2 with dorsal kyphotic
angulation overlap of the bony fragments.
Inferior fracture fragment of C2 dorsal to the
superior fragment and marked angulation of the
spinal   canal which was narrowed at the C2 level.
Marked widening of the posterior elements at C1-C2

consistent with ligamentous injury and disruption.
Severe prevertebral soft tissue swelling extending
from the skull base down to approximately C6.    A
nondisplaced fracture of the left transverse process
of C7.
4. Fracture of the right side of the sternum with
associated retrosternal contusion and/or hematoma,
fractures of the left 1st rib posteriorly, 3rd
through 7th ribs posterior, 3rd through 8th ribs
laterally and 2 fractures in the 12th rib.    A
comminuted fracture of the left scapula involving
the body and glenoid and a fracture of the left
clavicle near the AC joint.
5. Bilateral dependent atelectasis was also seen in
the left lung base and a small amount of fluid was
noted in the superior pericardial recess.
6. By CT scan of the head on 5/16/2007, the subdural
hematoma along the left convexity was unchanged but
there was increased dependent layering of blood.
There was also a new subarachnoid hemorrhage in the
right parietal region and new intraventricular
hemorrhage in the lateral   ventricles.    There was
the interval development of a prominent subdural
hemorrhage surrounding the brainstem from the mid-
pons through the upper cervical spinal cord.
Continued to be observed were left and right scalp
hematomas.
7. By 5/16/07 a CT scan of the maxillofacial bones
showed a laceration over the right zygoma and fluid
observed in the ethmoid, sphenoid and maxillary
sinuses.    Pneumocephalus was noted intracranially
that may have been a result of a nonvisualized
basilar skull fracture, sinus fracture, or from
surgical intervention due to the fusion of the
cervical spine to the skull base.    Also noted on
this imaging study was significant edema of the
prevertebral soft tissues in the upper neck that
collapsed the upper airway segments.

On the night of the injury, Mrs. Grosek had the
application of Gardner-Wells tongs through manual
reduction of the neck fracture by Dr. David
Andreychik, Spine Service, Orthopaedic Surgery.
Following she had surgery on 5/15/2007 with the
removal of the Gardner-Wells tongs,
application of Mayfield tongs, ORIF occipital
condyle and C2 with occipital to C5 Mountaineer with
PSF and left iliac crest bone graft surgery by Dr.
Fred Hess, Spine Service, Orthopaedic Surgery.
Immediately following this surgery due to her soft

tissue trauma and disruption in the neck, she had
airway closure with emergency tracheostomy
performed.  Due to mechanical necessity of
angulation of the neck devices, Mrs. Grosek returned
to surgery on 5/23/2007 for reapplication of
Gardner-Wells tongs and revision of the occipital to
C5 Mountaineer instrumentation for better alignment
in the neck.  On 5/24/2007 Dr. Thomas Kennedy
performed a revision of the cricothyrotomy with a
cervical laryngotracheoplasty, revision tracheotomy
and direct laryngoscopy.

Mrs. Grosek was observed on 5/16/2007 to have
developed bilateral 6th nerve palsies with large
angle esotropia and poor abduction of the eyes
bilaterally.  The etiology was from her intracranial
and brain trauma, results of subdural and
subarachnoid hemorrhages and contusions.  Through
this timeframe an inferior vena cava filter was
placed in addition to a feeding gastrostomy.  A
transient episode of acute renal failure occurred
with resolution.

Mrs. Grosek was transferred to Geisinger HealthSouth
Rehabilitation Facility; however, she developed
subacute deterioration in her level of consciousness
and interaction by approximately June 19 or 20, with
continued inability to appropriately interact which
developed into obtundation which required emergency
readmission to Geisinger Medical Center where a CT
scan of the brain showed massive hydrocephalus.  She
was taken to surgery on 6/22/2007 by Dr. Bruce
Wilder, Neurosurgery, for right ventriculoperitoneal
shunt.  Despite adequate placement and apparent flow
of cerebrospinal fluid, Mrs. Grosek did not improve
clinically and she was retaken to surgery by Dr.
Raymond Sekula of Neurosurgery for complete shunt
revision with replacement of the shunt valve and the
peripheral tubing on 6/24/2007.  Despite this
procedure, she did not adequately regain neurologic
function and remained stuporous.  Repeat CT scanning
of the brain continued to show extremely severe
panventricular hydrocephalus in the lateral, 3rd and
4th ventricles with subsequent pressure on the
surrounding brain structures both in the cerebral
cortex and brainstem. Due to no improvement of the
patient's clinical status and no improvement in the
level of ventricular size, she was retaken to
neurosurgery on 6/25/2007 by Dr. Wilder for
obstructive hydrocephalus and placement of a left

ventriculostomy for external ventricular drainage as an extreme potentially life-saving procedure for her severe hydrocephalus. Mrs. Grosek responded to this with ventricular size improvement and improvement in her clinical status. Her ventricular shunt was then internalized and after appropriate acute hospitalization and slow improvement she was readmitted to Geisinger HealthSouth Rehabilitation Hospital.

Mrs. Grosek eventually came to revision of her tracheostomy, however, noted was a paralyzed right vocal cord. She had revision of her feeding gastrostomy. She transitioned to home care with 24-hour a day nursing assistance.

SUMMARY AND CURRENT STATUS: Mrs. Helen Grosek sustained a severe injury complex consisting of extracranial and intracranial injury to include but not limited to multilocation severe subdural hematoma, subarachnoid hemorrhages, cerebral contusions and cerebral edema with diffuse axonal injury, intraventricular hemorrhage, severe fractures of the occipital condyle and C2 vertebral bodies, multiple chest, sternum, clavicle and scapular fractures, severe soft tissue injuries and tissue disruption in the neck, paravertebral and facial areas. Secondary severe and refractory obstructive hydrocephalus secondary to her head trauma, emergency cricothyrotomy and subsequent tracheostomy and paralyzed right-sided vocal cord. Episode of acute renal insufficiency. Lack of taste and smell secondary to intracranial and head trauma. Lack of neck mobility with resultant dysfunction in gait, positional sense, balance and walking. Bilateral and residual 6th nerve palsies producing continuous double vision/diplopia further aggravating balance, and postural stability and certainly interfering with vision requiring optical aids, patches and subsequent loss of stereotactic vision and probably need for further revision surgery. Despite 3 procedures for obstructive hydrocephalus, Mrs. Grosek continues to have enlarged ventricles and a most recent CT scan dated 1/29/2008 is showing mildly enlarged ventricles over prior studies which will need continuous and lifelong surveillance and probable revision surgery if the ventricles continue to increase in size.

Neurologically Mrs. Grosek has a complete loss of
taste and smell which will probably be permanent
secondary to her injuries.  Her ability to ambulate
and positional sense and stability is markedly
damaged secondary to her cervical spinal injuries,
soft tissue injuries of the neck, resultant major
fusion of the neck to the skull with in ability to
rotate the neck or laterally bend, and her prior
damage from her subdural hematoma, kinetic injury of
the brain with diffuse axonal injury,subarachnoid
hemorrhage, subdural hematoma and obstructive
hydrocephalus. Chronic pain is expected secondary to
her injury complex with the potential for
development of severe headache and/or neck pain.

By her most recent CT scan of the brain, there is
evidence of cerebellar and cerebrocortical atrophy
which was not present on her CT scans of the brain
at the time of her immediate injury probably
secondary to axonal loss secondary to her brain
trauma, hemorrhage and diffuse axonal injury.  This
will lead to accelerated compromise of neurologic
function and may be reflected in change in cognitive
function, motor status, position sense and
ambulation and severe major depression secondary to
brain trauma and the results of this trauma in
reduction of her prior-to-injury life style.

In addition, Mrs. Grosek is at continuous risk of
spontaneous injury as a result of her injury complex
such as falling, sudden changes in level of
consciousness or mental status, and any ongoing
illness or metabolic disorder will be more
prominently active in Mrs. Grosek due to her injury
complex.  Her recent hospitalization for a viral
syndrome and dehydration was necessitated because of
her inability to have normal recovery process which
is directly due to her prior injuries.  Particularly
prominent will be her falling risk which can lead to
catastrophic injury or life threatening injury due
to prior injury complex.  She is at increased risk
of posttraumatic epilepsy.

In summary, Mrs. Helen Grosek's prognosis is
extremely guarded neurologically and functionally.
She requires lifelong close neurologic and
neurosurgical surveillance and while obvious

complications can result from both her initial injury and from the surgeries and therapy required to treat her injuries, unexpected or unanticipated neurologic and neurosurgical complications may arise.

The above summary is based on a reasonable degree of medical certainty.

Respectfully

Jonathan P. Hosey, MD
Director, Department of Neurology
Medical Co-Director Neurosciences

JPH/ly

**10293**

## CERTIFICATE OF SERVICE

RICHARD A. RUSSO, ESQUIRE hereby certifies that on the 10th day of July, 2008, he electronically served the foregoing Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order upon the following:

Thomas A. Kuzmick, Esquire
Valerie Kellner, Esquire
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
Philadelphia, PA 19107

ROSENN, JENKINS & GREENWALD, LLP

BY:   /S/ RICHARD A. RUSSO
       RICHARD A. RUSSO, ESQUIRE
       Attorney I.D. No.  32311
       ANDREW D. BIGDA, ESQUIRE
       Attorney I.D. No.  74675
       15 South Franklin Street
       Wilkes-Barre, PA    18711
       (570)  826-5650
       Attorneys for Plaintiffs

591814.1