## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HELEN GROSEK, and** | : | **No. 3:07cv1592** |
| **ANTHONY GROSEK,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **PATHER TRANSPORTATION, INC.,** | : | |
| **PANTHER EXPEDITED SERVICES,** | : | |
| **INC., and** | : | |
| **ANTHONY L. SANDERS, a/k/a TONY** | : | |
| **SANDERS,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court is defendants' motion for a protective order relating to

plaintiffs' request for production of documents related to punitive damages (Doc. 42).

## A. Background

This case arises out of an accident between plaintiffs' automobile and a truck

driven by Defendant Anthony Sanders, an employee of Defendant Panther

Transportation.  On May 14, 2007, Defendant Sanders allegedly drove his tractor-

trailer through a steady red light at an intersection in Dallas Township, Luzerne

County Pennsylvania.  His truck struck the automobile operated by plaintiff Helen

Grosek, causing severe injuries.  Plaintiffs filed a lawsuit in this court on August 29,

2007, which alleged that Helen Grosek's injuries were a result of the negligence of

the defendants.  (See Doc. 1).

On June 6, 2008, this court granted plaintiffs' motion for leave to file an amended complaint which included a claim for punitive damages.  (Doc. 32). Plaintiffs filed that amended complaint, which added punitive damages to their claims.  (Doc. 34).  After the court denied (Doc. 40) defendants' motion for reconsideration of that order (Doc. 37), defendants filed a motion for a protective order relating to plaintiff's discovery requests in connection to their claim for punitive damages (Doc. 42).  The parties then briefed that motion, bringing the case to its present posture.

**B.  Discussion**

Defendants make three separate requests.  The court will address each in turn.

### i.  Protective Order

Defendants seek a protective order pursuant to Federal Rule of Civil Procedure 26(c) preventing the plaintiffs from conducting any discovery on the plaintiffs' financial condition until a jury concludes that punitive damages are warranted in the case.  They contend that evidence about defendants' financial condition cannot be relevant until a determination has been made that punitive damages are appropriate.  Since no such determination has been made, discovery on the defendants' financial status would be unduly burdensome, costly and inappropriate.  Defendants contend that plaintiffs have made no bona fide claim for punitive damages and the court therefore should not allow discovery on that matter.

2

Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c).  The "good cause" required for such an order "is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury.  Broad allegations of harm, unsubstantiated by specific examples . . . will not suffice." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).  Courts are to employ a balancing test to determine whether a protective order is appropriate. Pansy v. Borough of Stroudsburg, 23 Fed. 3d 772, 787 (3d Cir. 1994).  A "party seeking protection has the burden of showing that there is good cause for it." Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005).  The Third Circuit Court of Appeals has identified a number of factors to consider in determining whether a protective order should issue:

> (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether the embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing the information among litigations would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

Arnold v. Pennsylvania, 477 F.3d 105, 108 (3d Cir. 2007).

The question in this case, therefore, is whether good cause exists to issue a protective order preventing discovery of defendants' financial condition until a determination is made that punitive damages are warranted.

Defendants do not address these factors in their brief, and do not point to any

annoyance, oppression or embarrassment from the request.  In that sense,

defendants have demonstrated no prejudice which would occur from allowing

discovery, and the court could likely deny the motion on those grounds.  Defendants

do contend, however, that the discovery is premature and thus an undue burden.

They cite to several cases which they claim hold that "pretrial discovery of the

financial status of defendants is prohibited absent a bona fide claim for punitive

damages and is, thus, premature at this time."  (Brief in Support of Defendants'

Motion for a Protective Order (hereinafter "Defendants' Brief") at 6).

These cases do not stand in general for that proposition.[1]  Instead, they stand

mostly for the notion that a plaintiff may not seek discovery from a defendant to

determine whether that defendant has the means to satisfy a judgment.  See, e.g.,

Ranney-Brown Distributors, Inc. v. E.T. Barwick Industries, Inc., 75 F.R.D. 3, 4 (S.D.

Oh. 1977) (finding that "[O]rdinarily, Rule 26 will not permit the discovery of facts

concerning a defendant's financial status, or ability to satisfy a judgment, as such

matters are not relevant, and cannot lead to the discovery of admissible evidence.")

Bogosian v. Gulf Oil Corp., 337 F. Supp. 1228, 1230 (E.D. Pa. 1971) (finding that

---

[1]The defendants do cite to Chenoweth v. Schaaf, which granted a protective order preventing discovery of the defendant's financial status because plaintiff had offered in the complaint "nothing other than statements, conclusive in nature" demonstrating that "punitive damages will be an issue."  98 F.R.D. 587, 588 (W.D. Pa. 1983).  A subsequent court in the Eastern District of Pennsylvania pointed out that "[n]o court within the Third Circuit has subsequently followed Chenoweth.  Caruso v. The Coleman Company, 157 F.R.D. 344, 349 (E.D. Pa. 1994).  Instead, the court found, "when punitive damages are alleged, the weight of authority requires that a defendant disclose his financial condition in pretrial discovery without requiring a prima facie showing of punitive damages to justify discovery."  Id. at 348.

questions concerning a defendant's net worth and ability to satisfy a judgment "are not relevant to the subject matter of the lawsuit"); United States ex rel. P.W. Berry Company, Inc. v. General Electric Company, 158 F.R.D. 161, 164 (D. Ore. 1994) (finding that plaintiff's tax returns and financial statements were not relevant to the issues in a contract case and therefore subject to a protective order).   The cases instead stand for the proposition that a case is about the events that gave rise to it, not about the wealth of the individuals involved.  Punitive damages, however, are a different matter and require a different approach to discovery.  Indeed, one of the cases the defendants cite, Renshaw v. Ravert, maintains that while information concerning a defendants financial situation "is not ordinarily permitted . . .  when a plaintiff seeks punitive damages, the defendant's financial status becomes a relevant consideration."  Renshaw v. Ravert, 82 F.R.D. 361, 363 (E.D. Pa. 1979).   The defendants cite this case for exactly the opposite proposition:  that plaintiffs should not be allowed to inquire into defendants' financial status.  Another case, cited by the defendants for the proposition that the "court allowed discovery of the financial condition of the defendants in a punitive damages case *only* after liability had previously been determined," notes that "the weight of authority requires a defendant to disclose his financial condition in pretrial discovery when punitive damages are claimed."[2]  Luria Bros. & Co. v. Allen, 469 F. Supp. 575, 580 (W.D. Pa. 1979).

---

[2]American Bar Association Model Rule of Professional Conduct 3.3(a)(1) provides that "A lawyer shall not knowingly (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the

The court finds that the defendants' financial condition is relevant to the question of the level of punitive damages, which are at issue in this case.[3]   Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action."  Fed. R. Civ. P. 26(b)(1).  In this context, courts define relevancy widely, and material "'relevant to the subject matter involved in the pending action' . . . has been construed broadly to encompass any matter that bears on, or that

---

lawyer."  Further, the court reminds the defendants' attorney that "By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  FED. R. CIV. P. 11(b).  A court may impose sanctions for violating this rule.  See FED. R. CIV. P. 11(c).

   [3]The defendants cite to another case to support their position, but this case is far more equivocal than defendants suggest.  In that case, Blount v. Wake Elec. Membership Corp., the defendants had argued that discovery of their financial records should be precluded until "the trial court has determined that Plaintiff's evidence establishes a prima facie case for punitive damages."  162 F.R.D. 102, 105 (E.D. N.C. 1993).  The court rejected this argument, but found that cases cited by the defendant indicated that "a plaintiff must make some kind of factual showing that a viable claim for punitive damages exists before allowing discovery of financial worth."  Id.  The court did not cite any of these cases, nor explain what "some kind of factual showing" meant.  This court is unpersuaded by that court's reasoning.  North Carolina rules on punitive damages and discovery are inapplicable to this court, and the United States Supreme Court has been clear that discovery can be made on "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Here, the financial condition of the company is potentially relevant to the amount of punitive damages appropriate in the case.  The court finds it inefficient to somehow delay discovery on the amount of punitive damages available until after a factual determination on the availability of such damages can be made.  Since plaintiff has stated a claim for punitive damages, discovery on the amount of those damages is relevant.

reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Still, not all material is discoverable, and "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." Id. at 352.  Since punitive damages are "aimed not at compensation but principally meant at retribution and deterring harmful conduct," the question of the financial situation of the defendant is potentially relevant to the appropriate award in a punitive damages case.  Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, _____, (2008).  This court has found that plaintiffs have stated a claim for punitive damages, and discovery related to that issue is appropriate.  In addition, the court finds that delaying discovery on these matters until after the discovery of evidence supporting punitive damages would be inefficient and delay conclusion of the case.  The court will deny the defendants' motion on this point.

**ii. Information Sought from Fenway Partners, Inc.**

Defendants also claim that plaintiffs have improperly directed their punitive damage discovery requests at non-parties to the case.  The plaintiffs' discovery request seeks information from Fenway Partners, Inc. or any parent companies of the defendants.  Defendants contend that Fenway Partners does not directly own Defendant Panther II Transportation and exerts no management control over the

7

company.  Since Fenway is not a party to the litigation, defendants contend that

plaintiffs must issue subpoenas to obtain information from them.

"[Federal] Rule [of Civil Procedure] 33 requires that a corporation furnish such

information as is available from the corporation itself or from sources under its

control."  Brunswick Corp. v. Suzuki Motor Co., 96 F.R.D.684, 686 (E.D. Wisc.

1983).  Here, the court takes defendants' contention to be that Panther II and

Fenway are not related and that defendants therefore have no access to information

on Fenway's financial condition.  Defendants have a duty to turn over information

under their control, and this information can include information held by a parent

company.  See, e.g., United States v. Ciba Corp., 1972 Trade Cas., P74,026, *4

(E.D. 1971) (finding that a subsidiary which had a relationship with its parent

company on a matter in question in the litigation had a duty to obtain information

from the parent).  Since the information sought here is financial information which is

necessarily produced by the relationship between the parent and subsidiary, the

court finds that such information is under the subsidiary's control. To the extent that

Fenway and Panther have no business relationship, however, defendants have no

ability nor duty to turn it over.[4]

---

[4]The court notes that perhaps the most efficacious means of handling this situation
is for defendants to answer the plaintiffs' discovery request by explaining the financial
relationship between Fenway and Panther II Transportation as part of an objection to the
request.  If plaintiffs are dissatisfied with this answer, they may take appropriate action.
The court reminds the parties that written discovery motions filed before an attempt to
solve the problem through a telephone conference with the court are contrary to the
chamber's rules.

### iii.  Nature and Scope of Information Sought

Defendants also contend that the information sought by the plaintiffs is overly broad and unrelated to the issues at hand in the litigation.[5]  They complain that the accident took place in May 2007 but plaintiffs seek financial information from 2003-2008, far outside the incident in question.  Defendants also contend that a request for all corporate tax returns and financial statements for Fenway Partners and all documents filed with the Securities and Exchange Commission are overly broad, as are requests for financial statements used for bank loans from 2003-2007.

The court does not find this request unreasonable given the nature of the case.  Since defendants' financial condition is relevant to the question of the appropriate amount of punitive damages, information from a number of years would provide a better assessment of the true financial condition than information only from the year of the accident and would likely lead to relevant evidence.  Defendants may have had an exceptionally good year in 2007, leading to an unfair apportionment of damages given the real financial circumstances of the company.  Similarly, an expert assessing the financial condition of the company would need to know of any bonds, stocks, or other long-term financial obligations related to the company.  Plaintiffs' request for Securities and Exchange Commission filings and other financial

---

[5]The documents sought by the plaintiffs include: all interim financial statements for 2008; corporate tax returns for the years 2003-2007; corporate tax returns and financial statements for Fenway Partners, Inc. or any parent companies of defendants; all documents filed with the United States Securities and Exchange Commission; all financial statements used for private equity or bank loans for the years 2003-2007.

9

documents appears reasonably calculated to produce such evidence.  Finally,

defendants have not pointed to any undue hardship that would result from providing

this information, or even attempted to argue that producing it would be difficult and

time-consuming.  The court will therefore deny the motion this point as well.

## C.  Conclusion

The defendants' motion for a protective order will be denied.  The court

recognizes, however, that the information that is the subject of defendants' motion

could contain matters sensitive to the defendants' business.  In order to avoid

unnecessary disruptions or risk to that business, the court will direct the parties to

enter into a confidentiality agreement that protects the disclosure of this information.

An appropriate order follows.

The court further reminds the defendants of the discovery rules promulgated

by this court, discussed during the initial case-management conference held on

December 20, 2007 and provided for in the court's case management order.  (See

Doc. 16).[6]  The defendants are not again to ignore this order of the court.  Should

another discovery problem arise, the defendants are directed to telephone the court

and speak to the case administrator, Sylvia Murphy.  Ms. Murphy will arrange for a

telephonic conference to address the issue.  Written discovery motions and briefs

---

[6]This order informs the parties, in bold print, that "Counsel are directed not to file
written discovery motions.  In the event of a discovery dispute, counsel shall notify the
Case Administrator, Sylvia Murphy, who shall schedule a telephonic discovery conference."
(See Doc. 16).

10

are appropriate only after this conference, and only at the direction of the court.  The

court has adopted these procedures to expedite the discovery process, promote

cooperation between the parties and prevent the needless waste of time and money

that is often referred to as the "churning of fees."  The filing of further written

discovery motions by the defendants without direction from the court will result in

sanctions for failure to follow a discovery order.  <u>See</u> FED. R. CIV. P. 37(b).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HELEN GROSEK, and** | **:** | **No. 3:07cv1592** |
| **ANTHONY GROSEK,** | **:** | |
| **Plaintiffs** | **:** | **(Judge Munley)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **PATHER TRANSPORTATION, INC.,** | **:** | |
| **PANTHER EXPEDITED SERVICES,** | **:** | |
| **INC., and** | **:** | |
| **ANTHONY L. SANDERS, a/k/a TONY** | **:** | |
| **SANDERS,** | **:** | |
| **Defendants** | **:** | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 22nd day of July 2008, the defendants' motion for a protective order (Doc. 42) is hereby **DENIED**.  The parties are hereby **ORDERED** to enter into a confidentiality agreement regarding the financial information provided to the plaintiffs in relation to punitive damages.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**

12