IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN GROSEK, and<br>ANTHONY GROSEK, | : | No. 3:07cv1592 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| PANTHER TRANSPORTATION, INC.,<br>PANTHER EXPEDITED SERVICES,<br>INC., and<br>ANTHONY L. SANDERS, a/k/a TONY<br>SANDERS, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court is defendants' motion for partial summary judgment (Doc. 50). Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of an accident between an automobile driven by Plaintiff Helen Grosek and a tractor-trailer driven by Defendant Anthony Sanders. (Defendants' Motion for Partial Summary Judgment (Doc. 50) at ¶ 1).[1] On the date of the accident, May 14, 2007, Defendant Sanders was operating a tractor-trailer traveling southbound on Route 309 in Dallas Township, Pennsylvania. (Id. at ¶ 13).

---

[1] The defendants did not submit the separate statement of material facts required by the local rules. The defendants did, however, cite to the relevant portions of the record in their motion for summary judgment. Plaintiffs responded to these statements paragraph-by-paragraph in a response to the motion for summary judgment. The court will therefore use these statements to address the facts of the case in this opinion. The court urges the defendant to observe the rules of court in briefing future motions.

His truck collided with plaintiff's vehicle at the intersection of Route 309 with East Center Hill Road.  (Id. at ¶ 16).  The parties dispute whether Sanders drove through a red light before his truck struck the plaintiff's car or whether the light had merely turned yellow when the truck entered the intersection.  (Id. at ¶ 14).  (Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 54) at ¶ 14).  Sanders pled guilty to failing to stop at a red traffic signal, however.  (Sanders Deposition (Exh. 1 to Plaintiff's Response) (Doc. 55-6) at 189).

Sanders had received training from Caldwell Community College to meet the requirements for obtaining a Commercial Driver's License (CDL).  (Defendants' Motion at ¶ 17).  During his previous employment with United Parcel Service (UPS), Sanders received training as well.  (Id. at ¶ 18).  As part of his UPS training, Sanders had instruction from an on-the-road trainer, as well as receiving written materials and videotapes.  (Id. at ¶ 19).  On the date of the accident, Sanders was employed as an independent contractor.  (Id. at ¶ 20).  The parties dispute the amount of training Defendant Sanders received from the Defendant Company as part of this independent contractor status.  Defendants contend that Sanders received seven days of classroom training.  (Id. at ¶ 21).  Plaintiffs insist that the evidence demonstrates he received only three days of such training.  (Plaintiff's Response at ¶ 21).   The parties also dispute whether plaintiff received both written materials and videotapes, or just written materials, as part of his training.  (Motion at ¶ 22; Plaintiff's Response at ¶ 22).  They also disagree about whether Sanders received

2

training in the Smith System of driving techniques or any defensive driving training. (Motion at ¶ 23; Plaintiff's Response at ¶ 23).  Sanders did receive and read Defendant Panther's driver handbook and safety manual.  (Motion at ¶ 24).  The parties also disagree about whether additional mandatory training existed.  (Motion at ¶ 25; Plaintiff's Response at ¶ 25).

The parties disagree about the experience and training that Defendant Sanders had at the time Panther hired him, and about whether this training and experience was adequate.  Defendant Panther contends that its drivers are required to have six months of verifiable tractor-trailer driving experience before they are hired.  (Motion at ¶ 26).  Sanders did not have six months experience as a driver when he was hired, but had that experience when Defendant Panther included Sanders' time in driving school in its calculations.  (Motion at ¶¶ 26-27; Plaintiff's Response at ¶¶ 26-27).  Defendant Panther insists that Sanders met all of its driver eligibility requirements.  (Motion at ¶ 30).  Panther did not require Sanders to complete a written or road test before his hiring.  (Id. at ¶ 29).  Panther contends that Sanders's possession of a CDL obviated the need for such testing, but plaintiffs insist that even with his CDL Sanders did not meet the company's driver qualifications.  (Plaintiff's Response at ¶ 29).

**Jurisdiction**

This court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiffs are Pennsylvania citizens, and the defendant

3

corporations incorporated and with their principle places of business in states other than Pennsylvania. Defendant Sanders is a citizen of North Carolina. The amount in controversy exceeds $75,000. Because the court is sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

The case is before the court on defendants' motion for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendants argue that the court should grant them summary judgment on plaintiff's punitive damages claim on several grounds. The court will address each in turn.

### i. Punitive Damages Claim Against Defendant Sanders

Defendant Sanders contends that there is insufficient evidence of outrageous conduct for a jury to conclude that he is liable for punitive damages.

The court must first establish the standard for awarding punitive damages in a case like this one. As a general matter, because the court is sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S.

64, 78 (1938)).  In Pennsylvania, "'[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'"  Hutchinson ex rel. Hutchinson v. Luddy, 870 A. 2d 766, 770 (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984)).  Since "punitive damages are penal in nature," they are available "only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct."  Id.  In determining whether to award punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'"  Feld, 485 A.2d at 748.  A party may be liable for punitive damages by acting with "reckless indifference."  Medvecz v. Choi, 569 F.2d 1221 (3d Cir. 1977).  As such, "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk."  Hutchinson, 870 A.2d at 772.

    The court concludes that in this case a jury could find that plaintiff consciously appreciated and ignored the risk of causing an accident that his behavior caused.  If a jury concludes that Sanders ignored a red light and drove at full speed through an intersection, the jury could reasonably conclude that Sanders was aware of and ignored the risk that he would strike another vehicle legally crossing the intersection from another direction.  Plaintiff points to evidence by which a jury could come to this

conclusion. Defendant Sanders testified that he never slowed down as he approached the intersection, even though he had observed the stoplight change to yellow. (Sanders Deposition (Exh. 1) to Plaintiff's Response (Doc. 55-4) at 100-101). Sanders admitted that his foot was still on the accelerator when the accident occurred. (Id. at 101). Eyewitness testimony indicates that Sanders drove through a light that had been red "four or five seconds" before he entered the intersection and struck plaintiff's car. (Deposition of Ryan Kenney, Exh. 2 to Plaintiff's Response (Doc. 55-8) at 10-11). Another witness also reported that the weather was clear, and that Sanders ran through a red light before striking plaintiff's car. (Deposition of Patrick Touhey, Exh. 3 to Plaintiff's Response (Doc. 55-9) at 11-12). Plaintiff also employed an expert witness who concluded that the traffic light had been red for four to six seconds before Sanders's truck struck the plaintiff's car, and that Sanders had adequate time to stop his truck before entering the intersection but failed to do so. (Report of Lance E. Robson, Exh. 4 to Plaintiff's Response (Doc. 55-10) at 5-6).

In Focht v. Rabada, the Pennsylvania Superior Court concluded that "driving while under the influence of intoxicating liquor with its very great potential for harm and serious injury may under certain circumstances be deemed 'outrageous conduct' and 'a reckless indifference to the interests of others' sufficient to allow the imposition of punitive damages." 268 A.2d 157, 160 (Pa. Super. Ct. 1970). The court noted that "[a]utomobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the

7

possibility of death and serious injury increases substantially. Every licensed driver is aware that driving while under the influence of intoxicating liquor presents a significant and very real danger to others in the area." Id. at 161. While the case of running a red light is not as extreme as driving an automobile intoxicated, the concerns expressed by the Pennsylvania court about the danger posed by motor vehicles are magnified when the vehicle in question is a tractor-trailer weighing several tons. If a jury concludes that Defendant Sanders entered the intersection without even braking for an obvious red light, it could reasonably decide that the defendant was recklessly indifferent to a very real danger to others in the area. As a truck driver with experience and training in safety, the jury could conclude that Sanders knew or should have known of the consequences of such behavior. The circumstances of the accident therefore make punitive damages available.

Since the court has found that Sanders could be liable for punitive damages, the court also finds that Defendant Panther could be vicariously liable for punitive damages attributed to Sanders. In Pennsylvania, "[p]unitive damages may be awarded on the basis of vicarious liability." Shiner v. Moriarty, 706 A.2d 1228, 1240 (Pa. Super. Ct. 1998). Defendants do not appear to deny that Sanders served as an agent "subject to the principal's control over the details of his performance of the task for which he was appointed." Id. As such, Panther could be vicariously liable if a jury found Sanders liable, and the court will deny the motion for summary judgment on these grounds.

### ii. Claims for Punitive Damages Against Panther

Defendants also contend that no evidence establishes that punitive damages can be imposed against Panther in its own right. Plaintiff's claim for punitive damages, which is based on Panther's alleged failure to provide adequate training to Sanders, sounds in the torts of negligent supervision and failure-to-train. Pennsylvania courts have found that punitive damages are available in that context. See, e.g., Hutchinson, 870 A.2d at 773 (finding that "there is no general proscription in law against pursuing punitive damages in the [master-servant] context, where the facts so warrant."). At the same time, however, a plaintiff seeking punitive damages in the negligence context must demonstrate the availability of such damages by "examin[ing] the actor's conduct." Feld 485 A.2d 748. As with a claim for punitive damages against the servant, the plaintiff must show that the master's "conduct not only was negligent but that the conduct was outrageous, and warrants response in the form of punitive damages." Hutchinson, 870 A.2d at 772.

As evidence that the defendant company engaged in outrageous conduct worthy of punitive damages, plaintiffs point out that the defendant company did not follow its own safety standards in hiring Sanders. Sanders lacked the minimum requisite training required by the company's own guidelines. As such, the defendant company was surely aware that it had put a driver on the road who lacked the training appropriate to preventing the sort of injuries that occurred in this case. Moreover, plaintiffs argue that the training that the company provided was

9

substandard: the company never road tested Sanders and offered little in the way of continuing training. Plaintiffs also claim that an issue of fact exists as to whether the defendant company actually provided plaintiff with training as to when and how to slow down in the face of a light that had "long" been green. Finally, plaintiffs argue that the Defendant Company failed adequately to supervise plaintiff. The company never discussed the accident in question here with Sanders, never reprimanded him about substandard log book and poor time management, and never reprimanded him for speeding. Indeed, plaintiffs argue that company policies actually encouraged speeding as a cost-saving measure.

      The court will grant the defendants' motion on this point. Even if the jury were to believe all of the evidence cited by the plaintiffs, the jury could not find that defendants' conduct in training Sanders was reckless or outrageous. The evidence indicates that plaintiffs' injuries were caused by Sanders' failure to stop at a red light. None of the evidence advanced by the plaintiffs indicates that defendants' training encouraged drivers to ignore traffic laws or to take the risk of entering an intersection when a traffic light was red or yellow. While the training may not have offered clear advice about when and how to slow down when approaching an intersection, a jury could not find that these failing were so outrageous as to justify a finding a recklessness. Similarly, employing a driver who did not meet all of the training requirements does not amount to reckless indifference to the clear possibility that such a driver would ignore basic traffic laws, run a red light and injure another driver.

As such, the court will grant summary judgment to the defendants on this aspect of plaintiffs' punitive damages claim.

**Conclusion**

For the reasons stated above, the defendants' motion for partial summary judgment will be granted in part and denied in part. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HELEN GROSEK, and** | : | **No. 3:07cv1592** |
| **ANTHONY GROSEK,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **PANTHER TRANSPORTATION, INC.,** | : | |
| **PANTHER EXPEDITED SERVICES,** | : | |
| **INC., and** | : | |
| **ANTHONY L. SANDERS, a/k/a TONY** | : | |
| **SANDERS,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **ORDER**

**AND NOW**, to wit, this 20th day of February 2009, the defendants' motion for partial summary judgment is hereby **GRANTED** in part and **DENIED** in part as follows:

1) The motion is **GRANTED** with respect to plaintiffs' claim for punitive damages against Defendants Panther Transportation and Panther Expedited Services;

2) The motion is **DENIED** with respect to plaintiff's claim for punitive damages against Defendant Anthony Sanders; and

3) Plaintiffs may obtain punitive damages against Defendants Panther Transportation and Panther Expedited Services through vicarious liability.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**